MILES *v.* FREDENHAGEN.

1. EQUITY—CONSTRUCTION OF INTERLOCUTORY DECREE—JOINT AD-
   VENTURE—OIL AND GAS LEASES IN FIELDS IN AND OUT OF STATE.
   Interlocutory decree in suit for accounting, injunction and re-
   ceivership of joint adventure covering oil and gas leases re-
   quired that accounting be had as to leases entered into in an
   out-of-State field as well as those in a Michigan county, hence
   no modification of the decree is necessary in order to obtain
   final accounting as to all leases involved.

2. COSTS—BRIEFS.
   No costs are awarded either party on affirmance of decree en-
   tered in circuit court where appellee's brief is not in con-
   formity with court rule regarding separate statement of facts
   and reference to pages of printed record and in combining
   facts and argument (Court Rule No. 68 [1933]).

Appeal from Van Buren; Warner (Glenn E.), J.
Submitted June 14, 1944. (Docket No. 32, Calendar
No. 42,575.) Decided October 11, 1944.

Bill by Floyd C. Miles against Donald E. Freden-
hagen for an accounting of profits from sale of oil
and gas and for an injunction. Decree for plaintiff.
Affirmed.

*Jackson, Fitzgerald & Dalm,* for plaintiff.

*Anderson, Anderson & Anderson,* for defendant.

BOYLES, J. (*for modification of decree*). Plain-
tiff's bill of complaint alleges that defendant and
one Frank Henigman entered into an oral agree-
ment with plaintiff to prospect for and produce oil

or gas in the Bloomingdale oil and gas field in Van Buren county, that it was agreed each should receive one third of the net profits therefrom, that plaintiff made trips, devoted time to negotiating oil and gas leases, secured leases, particularly one from Mr. and Mrs. Veley, owners of land in the area, negotiated for and secured an agreement from well drillers, and that a producing well was drilled on the Veley lease from which defendant has received and kept large sums of money without accounting to plaintiff for his share. Plaintiff asks for an accounting, an order enjoining defendant from collecting further sums of money, and a receivership to conserve and distribute the proceeds from this oil and gas lease. The circuit court after a hearing decreed that plaintiff and defendant had agreed to share in a joint enterprise, that plaintiff was entitled to his share, that the cause be referred to a circuit court commissioner for an accounting, and that the defendant be restrained from collecting or receiving any further sums of money until plaintiff had been paid in full. Defendant appeals.

Appellant claims that plaintiff's suit is for compensation for services, for work performed by plaintiff. We do not so consider the bill of complaint. It sufficiently alleges facts and circumstances which, if proven, constitute a joint adventure between the parties. *Johnson* v. *Ironside,* 249 Mich. 35; *Hathaway* v. *Porter Royalty Pool, Inc.,* 296 Mich. 90 (138 A. L. R. 955).

Appellant's principal claim is that the testimony fails to establish a joint adventure. The circuit judge held that a joint adventure had been proven, and we have examined the record to ascertain *de novo* whether a joint adventure has been established by the proofs.

The parties resided in Illinois. In 1937 plaintiff, an employee of General Electric Company in Chi-

cago, became interested in exploring for oil and gas as a sideline. Plaintiff and defendant and Frank Henigman—also a resident of Chicago—took leases both in Illinois and Michigan in defendant's name and put down wells in both places. Henigman had an instrument referred to as a "doodlebug" to test for oil. The defendant herein also had a "doodlebug," and with these so-called test instruments they experimented in tests for oil both in Illinois and in Michigan. Henigman and the defendant herein invited plaintiff to come in with them on a deal in western Illinois. They took leases in that territory in defendant's name, and had one or more wells drilled there. Plaintiff testified that during one of their frequent conferences he said to defendant:

"Well, I am—don't know much about this western Illinois but I have had a background of knowledge of what is going on in Michigan and Mr. Henigman and I have been up there a great deal and there is a territory east of Bloomingdale that we think quite a bit of."

Plaintiff's employer objected to his spending so much time in oil prospecting and in 1939 plaintiff took a two-month leave of absence from his employment. During this time plaintiff, Henigman and defendant continued to get together and examine oil prospects. Plaintiff mentioned to Henigman and defendant that he "still liked an area up around Bloomingdale (Michigan)." He testified:

"I said 'Well, let's go over to Michigan—I would like to show that to you, Mr. Fredenhagen, and see what you think of it—' as Henigman and I had not only checked that area but we had stopped in on a couple of occasions to talk to Walter Schock, a lease that we were particularly interested in to find out whether or not it was under lease and when it would

be ready for re-leasing and we had gone out to make some tests on his farm. So he said 'Fine. I would be glad to go over' and said 'This looks good to you fellows,' said 'We will put that in on the play and we will drill a well in western Illinois and drill one in Bloomingdale—' so I brought them over in my car—and during that trip we made a number of tests in the area.''

They discussed the taking of leases in Michigan and agreed that leases should be taken in defendant Fredenhagen's name because of the objections voiced by plaintiff's employer. Plaintiff testified:

''I said 'All right, Mr. Henigman and Mr. Fredenhagen, we will start in leasing over there and we will share the profits in the interest equally. Is that agreeable to you fellows?' They both said 'That is entirely agreeable.' ''

The record shows that plaintiff assisted in obtaining leases in Michigan, the three men took trips to places in Illinois as well as to Bloomingdale in plaintiff's car, obtained leases in defendant's name in both places. Some of the Michigan leases were prepared by plaintiff in his handwriting and secured by plaintiff, using defendant's name as lessee. Others were obtained by defendant. Plaintiff assisted in raising the funds for drilling, in securing a firm of oil well drillers to develop the leases, and actively participated in obtaining the drilling of wells. Plaintiff tried to procure a written agreement with defendant. He testified:

''I said to Mr. Fredenhagen, 'We ought to have something in writing between us—we haven't got anything here to show what relationship—what agreement we actually have—we don't have anything and something might happen to any one of the three of us—one of us might be killed and leave one

or the other of us holding the sack—and for the protection of all of us we ought to have something— some sort of agreement for the work we have been doing'—Mr. Henigman said that there should be something—Mr. Fredenhagen said we should have something.''

We find from the record that these three parties entered into a joint adventure to explore for oil and gas both in Illinois and in Michigan; that plaintiff actively participated in the venture and materially aided in bringing it to fruition. A well was drilled on the Schock lease and came in a nonproducer. At the same time, concurrently with the work on the Schock lease in Michigan, these parties drilled what they called the Roberts well, in Illinois. Henigman and the defendant stayed in Illinois and looked after the Roberts matter and plaintiff came to Michigan and attended to drilling the Schock well. The Veley lease was a part of the same joint venture. A firm of well drillers—Clapsaddle & Harris—was engaged to drill on some leases, they agreeing to drill four wells. A written agreement was signed by Harris and the defendant (the leases being in defendant's name). Clapsaddle & Harris drilled in a well on the Veley lease which proved to be a producer.

The negotiations between plaintiff and defendant for a written agreement came to nothing. Henigman apparently has been settled with by defendant, or has been paid from the profits, at least it does not appear that he is making any claim, and he does not appear in this suit. Plaintiff claims he has had nothing in return for his part in the venture.

Verbal joint adventure agreements are generally indefinite, and the intention of the parties must be gleaned from the entire course of their conduct and transactions. It is reasonable to believe that plaintiff would not have devoted so much time and ex-

pense in obtaining leases, raising funds to drill wells, arranging for contracts, using his own transportation on a considerable number of trips in Illinois and to Michigan without some agreement to share in the profits. The record supports the finding of the circuit judge that these parties agreed to a joint adventure to procure leases, explore for oil and develop the leases, and share in the proceeds.

Defendant claims that such an agreement, not in writing, is void being within the statute of frauds. The agreement between the parties was to share in the profits, and the sale of an interest in lands is not involved in this case. The statute of frauds (3 Comp. Laws 1929, § 13413 [Stat. Ann. § 26.908]) is not a bar to the action. *Youngs* v. *Read,* 246 Mich. 219; *Stewart* v. *Young,* 247 Mich. 451.

One other question requires consideration. Appellant questions whether the proofs do not disclose a joint adventure covering leases in western Illinois as well as in Van Buren county, Michigan. The bill of complaint makes no claim of an agreement to prospect for oil or gas in any area except the Bloomingdale field in Van Buren county, Michigan. Plaintiff's claim for a share in profits, as set up in his bill of complaint, is limited to the producing oil well on the Veley lease. The bill of complaint seeks an accounting only for the proceeds from the well on this one lease. The defendant claims that the money realized from the Veley lease has been used in exploring for or drilling other wells on other oil and gas leases. In the original decree the lower court granted plaintiff an accounting limited to the Veley lease. Subsequently the court granted a rehearing on its own motion, saying:

"Clearly, if the parties entered into a joint adventure to acquire leases and drill for oil plaintiff

cannot select one well, the operation of which was profitable, and demand an accounting and be awarded a money decree and thus avoid liability for losses on other leases acquired by the joint adventurers.

"A rehearing is hereby ordered on the following:

"1. In addition to the Veley lease, did plaintiff, defendant, and Henigman enter into a joint adventure to acquire other oil leases and prospect for and produce oil and gas?

"2. If so, name, location and description of such leases and operations carried on thereunder?"

Further testimony was taken, following which the court entered a decree designating the leases covered by the joint adventure. The court decreed that plaintiff, defendant and Henigman entered into a joint adventure from which plaintiff and defendant were each to receive one third of the net profits. The decree further provides that the adventure covered leases and operations in the western Illinois field as well as in Van Buren county before November 9, 1940, at which time the parties terminated their operations. However, the decree designates only the Michigan leases, and directs a reference to a circuit court commissioner for an accounting of the profits and losses with respect to the Michigan leases only. The record plainly establishes that the joint adventure was not limited to the Michigan operations, but included the operations in Illinois as well. The decree must be modified in that respect. The equities arising from the entire joint adventure are before the court. We are in accord with the conclusion that plaintiff has established the existence of a joint adventure, and that consideration should not be restricted to the profits from the successful Veley well, disregarding losses and expenses from other operations in the adventure. The chancery court has jurisdiction to determine the

equities of the entire matter and plaintiff cannot have the aid of a court of equity as to a part, and disregard other parts of the venture which are not to his advantage. Further testimony on the accounting may be taken to show to what extent the operations on various leases were paid for by others. We see no reason why the accounting cannot be comprehensive of the entire joint adventure.

The case is remanded for modification of the decree in the above regard, and for an accounting of the profits and losses and expenses with respect to the entire business and operations of plaintiff and defendant in the joint adventure both in Illinois and in Michigan. The court below may have jurisdiction to take any further action in the case that may be necessary to a complete determination of the rights of the parties as justice may require.

Appellee's brief not being in conformity with Court Rule No. 68 (1933) regarding separate statement of facts and reference to pages of the printed record, and in combining facts and argument, and appellant having prevailed only in part, no costs should be awarded.

The decree should be modified and the case remanded for accounting and further proceedings in accordance herewith.

Wiest and Sharpe, JJ., concurred with Boyles, J.

North, C. J. Mr. Justice Boyles is of the opinion that the decree entered in the circuit court should be modified. He seems to reach this conclusion by construing the trial court's decree to limit the accounting to operations in Michigan. I think the decree should not be so construed.

While the reference to the commissioner to take testimony was limited to the Michigan transactions,

it appears from the plain wording of the decree entered in the circuit court that the accounting was to include transactions incident to the joint adventure in Illinois as well as those in Michigan. There is testimony in the record pertinent to an accounting as to the operations in Illinois; and if necessary to a full accounting, further testimony may be taken as to those transactions. The decree entered in the circuit court was not a final decree, but only an interlocutory decree. That the trial judge clearly intended the final decree should embody an accounting as to transactions both in Michigan and Illinois appears from the following portion of the decree entered in the circuit wherein the court found:

"That said joint adventure covered oil and gas leases and operations in the so-called western Illinois field and all oil and gas leases on property in Van Buren county, Michigan, taken in the name of defendant Donald E. Fredenhagen on or before November 9, 1940. That an accounting should be taken of the profits and loss *on all such leases and operations thereon.*"

Since the decree specifically provides as above indicated there is no occasion for this Court ordering a modification. The decree entered in the circuit court is affirmed and the case remanded for further proceedings incident to a final accounting. For reasons given by Mr. Justice BOYLES, no costs will be awarded on this appeal.

STARR, BUTZEL, BUSHNELL, and REID, JJ., concurred with NORTH, C. J.